**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>Plaintiff,<br><br>V.<br><br>J.J. KELLER & ASSOCIATES, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-00853<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this complaint against J.J. Keller & Associates, Inc. ("J.J. Keller" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,058,040 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 2 | 7,742,388 | Packet Generation Systems and Methods | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 3 | 7,656,845 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 4 | 7,260,153 | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 5 | 6,633,616 | OFDM Pilot Tone Tracking | https://image- |

| | Patent Number | Title | Available At |
|---|---|---|---|
| | | for Wireless LAN | ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 6 | 6,549,583 | Optimum Phase Error Metric for OFDM Pilot Tone Tracking in Wireless LAN | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| 7 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 8 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751 |
| 9 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 10 | 8,494,581 | System and Methods for Management of Mobile Field Assets *via* Wireless and Held Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |
| 11 | 6,647,270 | Vehicletalk | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |
| 12 | 7,092,723 | System and Method for Communicating Between Mobile Units | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7092723 |
| 13 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2.     Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.     Based on public information, Defendant J.J. Keller & Associates, Inc. is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at 3003 Breezewood Lane, Neenah, WI 54956.

5.     Based on public information, Defendant engages in making, using, selling, offering

for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

## **JURISDICTION AND VENUE**

6.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District from those regular and established places of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant offers products and services, including through the use of the Accused Products, and conducts business in this District.

10.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this judicial district.

11.     Specifically, Defendant intends to do and do business in, has committed acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers, including in this District.

12.     On public information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities in this District, including, but not limited to, facilities at the following addresses: 3003 Breezewood Lane, Neenah, WI 54956; and 7273 State Road 76, Neenah, WI 54956.

13.     In addition, to conduct this business, Defendant employs a number of individuals within this District. These individuals' employment with Defendant is conditioned upon and based on their residence and continued residence within this District to further the specific infringing business activities of Defendant within the District.  *See, e.g.*, *VP of Software Engineering*, J.J. KELLER & ASSOCIATES (last visited June 11, 2025), https://jobs.jjkeller.com/job/Neenah-VP-of-Software-Engineering-WI-54957/1279278800/ ("This role will work onsite (3 days per week) at our corporate office and the position requires you to reside near the Neenah, WI area.  Will consider relocation for the right candidate.").

14.     Defendant's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in this District, and Defendant affirmatively acted to make permanent operations within this District.  *See In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017); *In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985).

15.     Upon information and belief, Defendant ships and cause to be shipped into this District infringing products and materials instructing their customers to perform infringing activities to their employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

16.     Defendant markets, sells, and delivers Accused Products in this District and has committed acts of infringement in this District.

17.     Defendant commits acts of infringement in this District, including, but not limited to,

importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

18.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19.    Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://www.jjkeller.com/, through which it advertises, sells, offers for sale, provides, and/or educates customers about its products and services.

20.    Defendant makes, uses, causes to be used, sells, offers for sale, imports, provides, supplies, and/or distributes one or more "J.J. Keller" fleet management platform and tracking solutions, including, but not limited to, the J. J. Keller Telematics Device, J. J. Keller® Road Cam, J. J. Keller® Road & Driver Cam (DASH CAM PRO220), J. J. Keller Encompass Fleet Management System, J. J. Keller FleetMentor Service, J. J. Keller Encompass Vehicle Tracking, J. J. Keller driver apps (such as Encompass eDVIR App, ELD App), J. J. Keller ELD Tablets, J. J. Keller Telematics Devices including ELD 2.5, VT100 Tracking Device, Dash Cams (Dash Cams (VP220D (Dash Cam PRO), NC200, NC110), and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").   *See* **Exhibits A–M** (Evidence of Use Regarding Infringement of the Asserted Patents).

21.    Defendant, using the Accused Products, performs wireless communications and methods associated with performing and/or implementing wireless communications including, but

not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

22. The wireless communications performed and/or implemented by the Defendant using, *e.g.*, the Accused Products, among other things, generates and transmits packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols

23. Defendant, using the Accused Products, performs singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

24. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 7,058,040

25. Fleet Connect repeats and re-alleges the allegations in paragraphs 1-26 above as though fully set forth in their entirety.

26. For purposes of this Count I, the "Accused Products" include J.J. Keller Telematics Device, J. J. Keller® Road Cam, J. J. Keller® Road & Driver Cam (DASH CAM PRO220), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

27. The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718, which was filed on September

21, 2001.

28.    Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

29.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '040 patent.

30.    The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

31.    The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

32.    Defendant has directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

33.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040).

34.    For example, as detailed in **Exhibit A**, Defendant, when using the Accused Products,

performed a method for data transmission over first and second media that overlap in frequency, comprising: computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of time-slot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service.

35.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,742,388

36.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

37.     For purposes of this Count II, the "Accused Products" include J.J. Keller Telematics Device, J. J. Keller® Road Cam, J. J. Keller® Road & Driver Cam (DASH CAM PRO220), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

38.     The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665, which was filed July 20, 2005.

39.     Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

40. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '388 patent.

41. The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

42. The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43. Defendant has directly infringed, and continue to directly infringe, one or more claims of the '388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

44. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388).

45. For example, as detailed in **Exhibit B**, Defendant, using the Accused Products, performs a method comprising: generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol; increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of

the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

46. Defendant had knowledge of the '388 patent at least as of the date Defendant was notified of the filing of this action.

47. Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1. *See* Exhibit B.

48. Such steps by Defendant has included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement. Defendant has been and is aware that the normal and customary use of the Accused Products by others would infringe the '388 patent. Defendant's inducement is ongoing. *See* Exhibit B.

49. Since at least the time of receiving the complaint, Defendant has indirectly infringed

and continues to indirectly infringe by contributing to the infringement of the '388 patent. Defendant has contributed and continue to contribute to the direct infringement of the '388 patent by their customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* Exhibit B.

50.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

51.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

52.     Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

53.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,656,845

54.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

55.     For purposes of this Count III, the "Accused Products" include J.J. Keller Telematics

Device, J. J. Keller® Road Cam, J. J. Keller® Road & Driver Cam (DASH CAM PRO220), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

56.     The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010, after full and fair examination of Application No. 11/402,172, which was filed on April 11, 2006.  A Certificate of Correction was issued on November 30, 2010.

57.     Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

58.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '845 patent.

59.     The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

60.     The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

61.     Defendant has directly infringed one or more claims of the '845 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused

Products.

62.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845).

63.     For example, as detailed in **Exhibit C**, Defendant, when using the Accused Products, performed a method comprising: a base station allocating at least one of a plurality of data channels to a first medium for data transmission via a wireless device; the base station allocating at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device; and the base station dynamically adjusting, during data transmission, a number of the data channels assigned to one of the first and second media to remain within limits of a desired level of service.

64.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,260,153</u>

65.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

66.     For purposes of this Count IV, the "Accused Products" include J.J. Keller Telematics Device, J. J. Keller® Road Cam, J. J. Keller® Road & Driver Cam (DASH CAM PRO220), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

67.     The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21,

2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.

68.     Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

69.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '153 patent.

70.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

71.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

72.     Defendant has directly infringed one or more claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

73.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent, as detailed in **<u>Exhibit D</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153).

74. For example, as detailed in **Exhibit D**, Defendant, when using the Accused Products, performed a method for evaluating a channel of a multiple-input multiple-output (MIMO) wireless communication system, wherein said communication system comprises at least two communication devices having a plurality of radiating elements for the parallel transmission of data sub-streams, comprising: defining a channel matrix metric, said channel matrix metric comprising a respective predefined function of channel matrix singular values for each of said data sub-streams, such that each of said predefined functions provides a measure of cross-talk signal to noise ratio (SNR) for said respective sub-stream; obtaining an estimated channel matrix; performing a singular value decomposition (SVD) of said estimated channel matrix to obtain estimated channel singular values, said singular value decomposition comprising a left-hand unitary weighting matrix, a diagonal matrix of said estimated channel singular values, and a right-hand unitary weighting matrix; and calculating a respective crosstalk measure for each of said sub-streams from said channel matrix metric and said estimated channel singular values.

75. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 6,633,616

76. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

77. For purposes of this Count V, the "Accused Product" includes J.J. Keller Telematics Device, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

78. The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081, which was filed on August 21, 2001.

79. Fleet Connect owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

80. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '616 patent.

81. The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of producing or generating a pilot phase error metric.

82. The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83. Defendant has directly infringed one or more claims of the '616 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

84. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent, as detailed in **Exhibit E** (Evidence of Use Regarding

Infringement of U.S. Patent No. 6,633,616).

85.    For example, as detailed in **Exhibit E**, Defendant, when using the Accused Products, performed a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver comprising: determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; processing, in a parallel path to the determining step, the OFDM preamble waveform with a fast Fourier transform; determining a phase error estimate of a subsequent OFDM symbol relative to the pilot reference points; and processing, in the parallel path to the determining step, the subsequent OFDM symbol with the fast Fourier transform; wherein the determining the phase error estimate step is completed prior to the completion of the processing the subsequent OFDM symbol with the fast Fourier transform in the parallel path.

86.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 6,549,583</u>**

87.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

88.    For purposes of this Count VI, the "Accused Product" includes J.J. Keller Telematics Device, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

89.    The USPTO duly issued U.S. Patent No. 6,549,583 (the "'583 patent") on April 15, 2003, after full and fair examination of Application No. 09/790,429, which was filed February 21,

2001.

90. Fleet Connect owns all substantial rights, interest, and title in and to the '583 patent, including the sole and exclusive right to prosecute this action and enforce the '583 patent against infringers and to collect damages for all relevant times.

91. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '583 patent.

92. The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

93. The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94. Defendant has directly infringed one or more claims of the '583 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

95. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583).

96. For example, as detailed in **Exhibit F**, Defendant, when using the Accused Products,

performed a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver comprising: determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; and estimating an aggregate phase error of a subsequent OFDM data symbol relative to the pilot reference points using complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points; wherein the estimating step comprises performing a maximum likelihood-based estimation using the complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points.

97.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: <u>INFRINGEMENT OF U.S. PATENT NO. 7,206,837</u>

98.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

99.     For purposes of this Count VII, the "Accused Products" include J. J. Keller Encompass Fleet Management System, J. J. Keller FleetMentor Service, J. J. Keller Encompass Vehicle Tracking, J. J. Keller driver apps (such as Encompass ELD App), J. J. Keller Solution including ELD devices (ELD 2.5) and ELD Tablets, J. J. Keller Telematics Devices (including VT100 Tracking Device, Dash Cams (VP220D (Dash Cam PRO), NC200, NC110)), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

100.    The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17,

2007, after full and fair examination of Application No. 10/287,151, which was filed November 4, 2002.

101.    Fleet Connect owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

102.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '837 patent.

103.    The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

104.    The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

105.    Defendant has directly infringed one or more claims of the '837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

106.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent, as detailed in **<u>Exhibit G</u>** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

107.    For example, as detailed in **Exhibit G**, Defendant, when using the Accused Products, performed a method comprising: (i) receiving a location of a mobile communications device that is in transit to a destination; (ii) estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on: (a) said location, and (b) at least one historical travel time statistic; and (iii) sending the time-of-arrival bounds to said mobile communications device.

108.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII:          INFRINGEMENT OF U.S. PATENT NO. 7,593,751

109.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

110.    For purposes of this Count VIII, the "Accused Products" include J. J. Keller Encompass Fleet Management System, J. J. Keller Encompass Vehicle Tracking, J. J. Keller driver apps (such as Encompass eDVIR App, Encompass ELD App), J. J. Keller FleetMentor Service, J. J. Keller Telematics Device, J. J. Keller Solution including ELD devices (ELD 2.5) and ELD Tablets, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

111.    The USPTO duly issued U.S. Patent No. 7,593,751 (the "'751 patent") on September 29, 2009, after full and fair examination of Application No. 11/262,699, which was filed on October 31, 2005.

112.    Fleet Connect owns all substantial rights, interest, and title in and to the '751 patent,

including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

113.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '751 patent.

114.    The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

115.    The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

116.    Defendant has directly infringed one or more claims of the '751 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

117.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 6 of the '751 patent, as detailed in **Exhibit H** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751).

118.    For example, as detailed in **Exhibit H**, Defendant, when using the Accused Products, performed a method for managing data during a field operation using a handheld field data management device, comprising the steps of: providing a handheld field data management device

to a user, said handheld field data management device configured to enable the user to manage data collected at a field operation location, wherein said field data management device includes: a memory containing at least one field data management program module for working with a microprocessor to process instructions enabling a handheld field assessment device user to find a field operation location, collect industry-specific data at the field operation location, and communicate in real-time with a remote server to transfer data to and from a remote server, obtain updated instructions or procedures, and for retrieving third party information useful for the field operation from the Internet; a microprocessor executing said at least one field data management program; a positioning module including GPS for determining handheld device location and configured to coordinate with mapping software to provide map directions to field operation locations; a display for viewing field related data, maps and third party information retrieved from the Internet; a user interface adapted for enabling the handheld data management device user to interact with said at least one field data management program; and a wireless communication module for providing communications between the handheld field assessment device and the remote server, and for providing communications with third party resources from the Internet in support of field operations; enabling the user to access instructions including mapped directions from at least one of said field data management program and said remote sever to assist the user in finding a field operation location based on the location of the handheld field data management device; enabling the user to access instructions from said at least one field data management program to assist the user in collecting industry-specific data at the field operation location; and enabling the user to access instructions from said at least one field data management program to assist the user in communicating with a remote server using the handheld field data management device before, during and after the collection of industry-specific data at the field operation

location.

119.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

120.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

121.    For purposes of this Count IX, the "Accused Products" include J.J. Keller Encompass Fleet Management System, J.J. Keller FleetMentor Service, J.J. Keller Encompass Vehicle Tracking, J.J. Keller driver apps (such as Encompass eDVIR App, Encompass ELD App), J.J. Keller Solution including ELD devices (ELD 2.5) and ELD Tablets, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

122.    The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001.  A Certificate of Correction was issued on June 25, 2013.

123.    Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

124.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

125.     The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

126.     The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

127.     Defendant has directly infringed one or more claims of the '586 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

128.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent, as detailed in **Exhibit I** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

129.     For example, as detailed in **Exhibit I**, Defendant, when using the Accused Products, performed a method of conducting a field assessment using a handheld data management device, comprising: providing a hand held data management device user performing as a field assessor access to a industry-specific field assessment program module for enabling the field assessor to execute at least one of the following field assessments: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination; executing said program module to conduct the

field assessment; providing field-specific information required by said program module for said program module to render data in support of said field assessment; and retrieving data through said handheld data management device in support of said field assessment.

130. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT X: INFRINGEMENT OF U.S. PATENT NO. 8,494,581

131. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

132. For purposes of this Count X, the "Accused Products" include J.J. Keller Encompass Fleet Management System, J.J. Keller FleetMentor Service, J.J. Keller Encompass Vehicle Tracking, J.J. Keller driver apps (such as Encompass eDVIR App, Encompass ELD App), J.J. Keller Solution including ELD devices (ELD 2.5) and ELD Tablets, J.J. Keller Telematics Device, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

133. The USPTO duly issued U.S. Patent No. 8,494,581 (the "'581 patent") on July 23, 2013, after full and fair examination of Application No. 12/547,363, which was filed on August 25, 2009.

134. Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

135. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

136.     The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

137.     The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

138.     Defendant has directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

139.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the '581 patent, as detailed in **Exhibit J** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581).

140.     For example, as detailed in **Exhibit J**, Defendant's Accused Products comprised an apparatus, comprising: means for establishing a two-way communication channel between a server and at least one handheld device located at a field geographically distant from the server; means for accessing a program stored at the server to enable an assessment at the field using the at least one handheld device; means for managing data collected at the field using the at least one handheld device responsive to program; means for determining a geographic location of the at least one

handheld device; and means for enabling communicating the data collected at the field and the geographic location of the at least one handheld device between the at least one handheld device and other devices or the server, and further comprised means for enabling the at least one handheld device to identify service schedule requirements.

141.     For example, as detailed in **Exhibit J**, Defendant's Accused Products comprised an apparatus, comprising: means for establishing a two-way communication channel between a server and at least one handheld device located at a field geographically distant from the server; means for accessing a program stored at the server to enable an assessment at the field using the at least one handheld device; means for managing data collected at the field using the at least one handheld device responsive to program; means for determining a geographic location of the at least one handheld device; and means for enabling communicating the data collected at the field and the geographic location of the at least one handheld device between the at least one handheld device and other devices or the server, and further comprised means for enabling synchronization of a service schedule on the at least one handheld device with inventory data stored in the server.

142.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT XI: INFRINGEMENT OF U.S. PATENT NO. 6,647,270

143.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

144.     For purposes of this Count XI, the "Accused Products" include J.J. Keller Encompass Fleet Management System, J.J. Keller FleetMentor Service, J.J. Keller Encompass Vehicle

Tracking, J.J. Keller driver apps (such as Encompass ELD App), J.J. Keller ELD Tablets, J.J. Keller Telematics Devices including ELD 2.5, VT100 Tracking Device, Dash Cams (Dash Cams (VP220D (Dash Cam PRO)), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

145.    The USPTO duly issued U.S. Patent No. 6,647,270 (the "'270 patent") on November 11, 2003, after full and fair examination of Application No. 09/659,074, which was filed September 11, 2000.

146.    Fleet Connect owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

147.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '270 patent.

148.    The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

149.    The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

150.    Defendant has directly infringed one or more claims of the '270 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

151.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent, as detailed in **Exhibit K** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270).

152.    For example, as detailed in **Exhibit K**, Defendant's Accused Products comprised a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes: a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information; whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit.

153.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT XII: <u>INFRINGEMENT OF U.S. PATENT NO. 7,092,723</u>**

154.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

155.     For purposes of this Count XII, the "Accused Products" include J.J. Keller Encompass Fleet Management System, J.J. Keller FleetMentor Service, J.J. Keller Encompass Vehicle Tracking, J.J. Keller driver apps (such as Encompass ELD App), J.J. Keller ELD Tablets, J.J. Keller Telematics Devices including ELD 2.5, VT100 Tracking Device, Dash Cams (Dash Cams (VP220D (Dash Cam PRO)), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

156.     The USPTO duly issued U.S. Patent No. 7,092,723 (the "'723 patent") on August 15, 2006, after full and fair examination of Application No. 10/679,784, which was filed October 6, 2003.

157.     Fleet Connect owns all substantial rights, interest, and title in and to the '723 patent, including the sole and exclusive right to prosecute this action and enforce the '723 patent against infringers and to collect damages for all relevant times.

158.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '723 patent.

159.     The claims of the '723 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

160.    The written description of the '723 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

161.    Defendant has directly infringed, and continue to directly infringe, one or more claims of the '723 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

162.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '723 patent, as detailed in **Exhibit L** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,092,723).

163.    For example, as detailed in **Exhibit L**, Defendant's Accused Products comprised a vehicle configured to transmit and receive voice or data communications having a plurality of data packets, the vehicle comprising: a GPS receiver; a remote unit, including; a memory for storing a unique identifier of the vehicle; an input for receiving a position signal from the GPS receiver, the position signal indicating the position of the vehicle; a transceiver for receiving a wireless communication from a sending remote unit, the received wireless communication including the unique identifier, said transceiver downconverting the received wireless communication from RF to a received baseband communication; a microprocessor for receiving the position signal and the received baseband communication; said microprocessor for generating a transmit baseband communication including data packets with data fields, the data fields including the unique identifier of the sending remote unit, information derived from the position signal, and an address of a desired remote unit; and said transceiver for upconverting the transmit baseband

communication to RF for transmission as a transmit wireless communication to the desired remote unit.

164. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT XIII:**     **INFRINGEMENT OF U.S. PATENT NO. 7,741,968**

165. Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-26 above as though fully set forth in their entirety.

166. For purposes of this Count XIII, the "Accused Products" include J.J. Keller Encompass Fleet Management System, J.J. Keller FleetMentor Service, J.J. Keller Encompass Vehicle Tracking, J.J. Keller driver apps (such as Encompass ELD App), J.J. Keller Solution including ELD devices (ELD 2.5) and ELD Tablets, J.J. Keller Telematics Devices (including VT100 Tracking Device, Dash Cams (VP220D (Dash Cam PRO), NC200, NC110)), and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, functionality, and applications.

167. The USPTO duly issued U.S. Patent No. 7,741,968 (the "'968 patent") on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

168. Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

169. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

170. The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

171. The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

172. Defendant has directly infringed, and continue to directly infringe, one or more claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

173. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 4 of the '968 patent, as detailed in **Exhibit M** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968).

174. For example, as detailed in **Exhibit M**, Defendant's Accused Products perform the method of keeping track of a group of individuals, said method comprising: receiving at a portable hand-held device current geographic location data pertaining to each of said individuals; displaying said received current geographic location data on said portable hand-held device; sending converging instructions to at least one of said individuals for allowing said

individual to converge with said hand-held device; and generating ETAs pertaining to convergence between said one individual and said handheld device.

175.     Defendant had knowledge of the '968 patent at least as of the date Defendant was notified of the filing of this action.

176.     Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent. Defendant has induced and continue to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 4. *See* <u>Exhibit M</u>.

177.     Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '968 patent. Defendant's inducement is ongoing. *See* <u>Exhibit M</u>.

178.     Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '968 patent.

Defendant has contributed and continues to contribute to the direct infringement of the '968 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for example, claim 4. The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* <u>Exhibit M</u>.

179. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

180. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

181. Defendant's direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

182. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

183. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

184. WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '968 patent and the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '968 patent and the '388 patent by such entities;

c. Judgment that Defendant accounts for and pays to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringement of the '388 patent and the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 12, 2025</u>

Respectfully submitted,

By: <u>/s/ James F. McDonough, III</u>

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Kenneth A. Matuszewski (IL 6324308) *
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (708) 870-5803
Email: kenneth@rhmtrial.com

*Attorneys for FLEET CONNECT SOLUTIONS LLC*

\*Admitted to the Eastern District of Wisconsin

**<u>List of Exhibits</u>**

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040
B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388
C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845
D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153
E.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,633,616
F.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,549,583
G.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837
H.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751
I.   Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586
J.   Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581
K.  Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270
L.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,092,723
M. Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968